UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------X
GLADYS SANCHEZ and EDGARDO
SANCHEZ, on behalf of BRANDON
SANCHEZ                                    MEMORANDUM AND ORDER

       Plaintiff,                          Civil Action No.
                                           CV-98-6282(DGT)
    -against-

GEORGE PATAKI, ET AL.,

       Defendant.
---------------------------------X
SUSAN SHAFRAN-TORRES, ET AL.,

       Plaintiff,

    -against-                              Civil Action No.
                                           CV-95-3803(DGT)
GEORGE PATAKI, ET AL.,

       Defendant.
---------------------------------X

Trager, J:

   Attorney Jocelyne S. Kristal has moved for an award of attorney's fees pursuant to 42 U.S.C. § 1988(b) in connection with her representation of the plaintiffs in two cases, <u>Sanchez v. Pataki</u>, No. 98 Civ. 6282, and <u>Shafran-Torres v. Pataki</u>, No. 95 Civ. 3803.  These plaintiffs were some of several severely disabled individuals whose care was jeopardized by an unfortunate funding dispute between the City and State of New York in the mid-to-late nineties and who sued the State alleging equal protection violations.  See <u>Brooks v. Pataki</u>, 908 F. Supp. 1142, 1143-49 (E.D.N.Y. 1995) (discussing the background of these

disputes). For the reasons stated below, Ms. Kristal's motion for attorney's fees is denied.

**Background**

The Sanchez and Shafran-Torres cases were both filed as related to a previously filed case, Brooks v. Pataki, 908 F. Supp. 1142 (E.D.N.Y. 1995), vacated, 84 F.3d 1454 (2d Cir. 1996). Thus, a brief discussion of Brooks will provide useful background. Brooks involved eighteen severely disabled plaintiffs who, because New York had no suitable in-state facilities to accommodate them, were placed in out-of-state facilities. The funding for these out-of-state accommodations had traditionally been shared by the city and state. In October 1994, a funding dispute arose between the city and state that threatened plaintiffs' care, and they brought an action alleging constitutional violations and seeking injunctive relief to ensure continued funding. On November 16, 1995, a preliminary injunction was granted, requiring the State of New York to continue to fund plaintiffs' out-of-state care until the State could provide adequate in-state options. Brooks, 908 F. Supp. at 1156-57. On May 31, 1996, the Second Circuit Court of Appeals vacated the November 16, 1995 decision, Brooks v. Pataki, 84 F.3d 1454 (2d Cir. 1996), but the parties subsequently reached an agreement whereby the State would continue to provide the

requested funding.  On May 11, 2000, the case was administratively closed.

Shafran-Torres was filed at around the same time as Brooks, and although they proceeded independently, the two cases involved similarly situated plaintiffs.  And since the State had pledged to treat all similarly situated individuals the same, there was very little substantive litigation in connection with Shafran-Torres.  In fact, the State did not answer or move to dismiss the complaint, and there was no discovery.  Rather, because this court's November 16, 1995 preliminary injunction mandated funding with respect to the Brooks plaintiffs, the State voluntarily extended commensurate funding to all those similarly situated, including the Shafran-Torres plaintiffs.  Although the Second Circuit vacated the Brooks decision, removing the preliminary injunction that had compelled state funding, the parties were able to reach an agreement that provided for continued state funding even absent a judicial mandate.  Under this agreement, the State promised to maintain the status quo with regard to funding and to provide sufficient notice should it decide to change course, at which point the plaintiffs could renew their efforts to litigate their claims.  This agreement was never incorporated into a court order, but it remained in force until the Shafran-Torres action was dismissed for lack of prosecution on February 27, 2004.  It is important to note that the State

agreed to continue funding the Shafran-Torres plaintiffs because the State had already agreed to fund the similarly situated Brooks plaintiffs, not because of Ms. Kristal's minimal efforts on behalf of the Shafran-Torres plaintiffs.

In contrast to Brooks and Shafran-Torres, Sanchez involved the State's obligation to provide funding for severely disabled individuals who had "aged out" of their out-of-state programs. Because Sanchez was not similarly situated to the Brooks plaintiffs, the State's agreement to provide funding in Brooks did not ensure funding for Sanchez, as it had for the Shafran-Torres plaintiffs. Ms. Kristal claims that before she intervened the State had decided not to continue funding Sanchez's care. On June 24, 1998, Ms. Kristal, on Sanchez's behalf, applied to the New York State Office of Mental Retardation and Developmental Disabilities ("OMRDD") for emergency funding, and on June 30, she was informed that her request had been denied, at which point Ms. Kristal prepared to seek a temporary restraining order and injunctive relief. A few days later, however, on July 2, the OMRDD reversed course and decided to provide emergency funding for Sanchez, a decision Ms. Kristal claims was due to her intervention in the case. On October 15, 1998, even though the State was funding Sanchez's care, his representatives filed an action on his behalf with this court. In a series of communications that followed, the State agreed to continue to

provide the funding that Sanchez was seeking.  This assurance was similar to those the State gave to the Brooks and Shafran-Torres plaintiffs.  On June 22, 2004, the Sanchez case was dismissed for lack of prosecution.  In Sanchez, as opposed to Shafran-Torres, Ms. Kristal's efforts – specifically with regard to the application for emergency funding – may well have contributed to the State's decision to continue to provide funding.

In March 2007, several years after these actions were resolved, Ms. Kristal moved for an award of attorney's fees in connection with her representation of the Shafran-Torres and Sanchez plaintiffs. The State of New York argues that Ms. Kristal is not entitled to attorney's fees because her request is untimely,[1] and none of the plaintiffs in either case were prevailing parties for the purposes of 42 U.S.C. § 1988(b).

**Discussion**

Ms. Kristal bases her application for attorney's fees on 42 U.S.C. § 1988(b), which provides, "In any action or proceeding to enforce a provision of . . . 42 USCS §§ 1981-1983, 1985, [or] 1986 . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."  Merely achieving a favorable result,

---

[1] Because, as discussed below, Ms. Kristal's clients are not prevailing parties, the timeliness of her request need not be addressed.

however, will not qualify a plaintiff as a prevailing party for the purposes of Section 1988. The issue presented by Ms. Kristal's request, therefore, is whether the State's agreements to continue providing funding to her clients suffice to qualify them as prevailing parties. Three cases – <u>Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.</u>, 532 U.S. 598 (2001), <u>Roberson v. Giuliani</u>, 346 F.3d 75 (2d Cir. 2003), and <u>Torres v. Walker</u>, 356 F.3d 238 (2d Cir. 2004) – provide the general analytical framework for this inquiry.

In <u>Buckhannon</u>, the plaintiff had challenged a West Virginia law, claiming it violated the Fair Housing Act and the Americans with Disabilities Act. 532 U.S. at 600-01. While the case was pending, the State enacted legislation that mooted plaintiff's action, and the case was dismissed. <u>Id.</u> The plaintiff then moved for an award of attorney's fees, claiming that its lawsuit catalyzed the legislative action, and thus, it was the prevailing party. <u>Id.</u> at 601-02 (noting that the so-called "catalyst theory," repudiated by <u>Buckhannon</u>, posited that "a plaintiff is a 'prevailing party' if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct"). The Supreme Court concluded that the plaintiff was not a prevailing party, and thus not entitled to attorney's fees, because "[a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the

6

lawsuit, lacks the necessary judicial <u>imprimatur</u> on the change." <u>Id.</u> at 605 (emphasis in original). <u>Buckhannon</u> provided two examples of the types of relief that could support prevailing party status: "enforceable judgments on the merits and court-ordered consent decrees." <u>Id.</u> at 604. <u>Buckhannon</u> also noted that "[p]rivate settlements do not entail the judicial approval and oversight involved in consent decrees. And federal jurisdiction to enforce a private contractual settlement will often be lacking unless the terms of the agreement are incorporated into the order of dismissal." <u>Id.</u> at 604 n.7 (citing <u>Kokkonen v. Guardian Life Ins. Co. of America</u>, 511 U.S. 375 (1994)). The Second Circuit has noted that "in order to be considered a 'prevailing party' after <u>Buckhannon</u>, a plaintiff must not only achieve some 'material alteration of the legal relationship of the parties,' but that change must also be judicially sanctioned." <u>Roberson</u>, 346 F.3d at 79-80.

In <u>Roberson</u>, the Second Circuit decided that in addition to judgments on the merits and court-ordered consent decrees, a district court's express retention of jurisdiction over the enforcement of a settlement agreement carried the sufficient judicial imprimatur necessary to support prevailing party status and an award of attorney's fees. 346 F.3d at 81-82 ("We therefore join the majority of courts to have considered the issue since <u>Buckhannon</u> in concluding that judicial action other

7

than a judgment on the merits or a consent decree can support an award of attorney's fees, so long as such action carries with it sufficient judicial imprimatur."). Roberson reasoned that because the district court had retained jurisdiction over the settlement agreement and incorporated its terms into the order of dismissal, a violation of the agreement would have violated a court order. Id. at 82-83.

Roberson explicitly declined to address whether a settlement agreement standing alone, over which the district court does not retain jurisdiction, would justify an award of attorney's fees. Id. at 82 n.8. The Second Circuit has subsequently held, however, that a "so-ordered" stipulation of dismissal that does not contain a provision expressly retaining jurisdiction would not support an award of attorney's fees. Torres v. Walker, 356 F.3d 238, 244-45 (2d Cir. 2004). Moreover, Torres emphasized that the Supreme Court's "restrictive language in Buckhannon requires not only the physical incorporation of the settlement in a district court's order but also some evidence that a district court intended to place its 'judicial imprimatur' on the settlement." 356 F.3d at 244 n.6.

In sum, Buckhannon, Roberson, and Torres reveal that a plaintiff who achieves a favorable result by way of a judgment on the merits, court-ordered consent decree, or settlement agreement over which a district court retains jurisdiction may be

8

considered a prevailing party; but a plaintiff cannot be considered a prevailing party when the defendant has acted voluntarily to moot the controversy, or when the parties have reach a private settlement agreement – even if "so ordered" by the court – over which the court does not retain jurisdiction.

It is clear that in each case for which Ms. Kristal requests attorney's fees her clients achieved a favorable outcome – i.e., the state agreed to provide the requested funding. It bears noting, however, that Ms. Kristal contributed very little to the outcome achieved in <u>Shafran-Torres</u> because the State's agreement to fund the <u>Brooks</u> plaintiffs carried with it the promise to fund all those similarly situated, including the <u>Shafran-Torres</u> plaintiffs. <u>See</u> Def.'s Mem. of Law in Opp'n to Pls.' Application for Atty's Fees, Ex. Z at 11-12 ("<u>Brooks</u> Transcript, June 16, 1999"). Therefore, funding for the <u>Shafran-Torres</u> plaintiffs was achieved primarily through the efforts of the plaintiffs' lawyers in the <u>Brooks</u> litigation, whose fees the State agreed to pay. March 4, 2004 Stipulation and Order, <u>Brooks</u>, 908 F. Supp. 1142 (No. 95 Civ. 2902). On the other hand, Sanchez was not similarly situated to the <u>Brooks</u> plaintiffs, and it appears that Ms. Kristal's efforts on his behalf may have helped secure the emergency funding that he needed.

Nevertheless, under Section 1988(b), whether the fee-requesting lawyer helped to achieve a favorable outcome is

irrelevant if the resolution of the case lacks a sufficient judicial imprimatur. Here, both the Shafran-Torres and Sanchez matters were effectively mooted by the State's voluntary agreements to continue funding. In each case, the State agreed to maintain the status quo with respect to Ms. Kristal's clients and to provide sufficient notice if it decided to change course, at which point the plaintiffs could renew their efforts in court. Although this court actively participated in the negotiation, no judicial imprimatur was placed on the agreement between the parties, and this court did not have jurisdiction to enforce the State's promise to provide funding.[2] The need for Ms. Kristal to renew either litigation never arose, and each action was ultimately dismissed for failure to prosecute. The facts of Shafran-Torres and Sanchez are more akin to Buckhannon - where the defendant's voluntary action mooted the controversy - and

---

[2] In fact, during a conference in the Brooks case, attended by Ms. Kristal, the following exchange took place between counsel for the Brooks plaintiffs and the court:

> Mr. Burke: One thing we do want to assure ourselves of is that if matters fall apart, we have a federal forum and not an Article 78 proceeding.
>
> The Court: Well, [counsel for the State] is not going to commit herself to that. She's going to argue that I don't have jurisdiction, et cetera, but I would - you know, as long as they are protected, why create issues that don't exist.

Def.'s Mem. of Law in Opp'n to Pls.' Application for Atty's Fees, Ex. X at 6-7 ("Brooks Transcript, December 21, 1998").

Torres – where the parties resolved their dispute with a settlement agreement, over which the court did not retain jurisdiction – than to Roberson, where the court retained jurisdiction over the settlement agreement, and any violation of the agreement would have violated the court's order of dismissal. Ms. Kristal has not cited any cases where facts similar to Shafran-Torres or Sanchez led a court to award attorney's fees. Thus, even though Ms. Kristal's advocacy may have helped her client Sanchez to achieve a favorable result, neither he nor the Shafran-Torres plaintiffs are prevailing parties for the purposes of Section 1988(b).

## Conclusion

In conclusion, because neither the Shafran-Torres nor the Sanchez plaintiffs were prevailing parties under 42 U.S.C. § 1988, Ms. Kristal's request for attorney's fees is denied.

Dated: Brooklyn, New York
       March 18, 2008

                                        SO ORDERED:


                                        _____/s/_____
                                        David G. Trager
                                        United States District Judge